JEFFREY A. FINN (State Bar No. 185248)
  jeff@finniplaw.com
FINN IP LAW, PC
11400 West Olympic Boulevard, 9th Floor
Los Angeles, California 90064-1582
Telephone:  (310) 310-7989
Facsimile:  (310) 479-1422

Attorneys for Plaintiff
eMerchantBroker.com LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| EMERCHANTBROKER.COM LLC, a California limited liability company,<br><br>    Plaintiff<br><br>  v.<br><br>UNDERDOG TECHNOLOGIES, INC., a Delaware corporation,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff eMerchantBroker.com LLC complains and alleges the following against Underdog Technologies, Inc., *d/b/a* Pinwheel.

## PARTIES

1. Plaintiff eMerchantBroker.com LLC ("Plaintiff" or "EMB") is a limited liability company organized under the laws of California with a principal place of business at 2985 E. Hillcrest Dr., Suite 209, Thousand Oaks, California 91362.

2. On information and belief, Defendant Underdog Technologies, Inc., *d/b/a* Pinwheel ("UTI"), is a Delaware corporation with a principal place of business at 335 Madison Avenue, Floor 16, New York, NY 10017.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this action under Title 28 United States Code, §§ 1331 and 1338, and 15 U.S.C. §§ 1116 and 1121, and under the principals of supplemental jurisdiction pursuant to 28 U.S.C. §1367.

4. On information and belief, this Court has personal jurisdiction over Defendant UTI because it conducts business transactions at least over the internet with customers and potential customers in California and engages in business activities that constitute substantial or continuous and systematic contacts with the State of California, and has committed infringing acts in California.

5. Venue is proper in this District under Title 28 United States Code § 1391(b).

## BACKGROUND FACTS

6. Plaintiff EMB began operations in the United States in 2011 as an independent sales organization ("ISO")/merchant services broker, primarily to help merchants accept credit card and debit card payments. Since then, it has evolved into a leading financial services company serving customers in the United States with a broad range of offerings, from credit and debit card processing, payment

gateways, ACH and check processing, business funding, fraud detection and other financial technology ("fintech") and related software services. From its very beginnings, EMB has been an innovator at the intersection of software and the payment industry, with the goal of making it easier and more efficient for both online and brick and mortar companies and individuals to do business and manage the financial side of their operations.

7. Toward that end, in 2016, EMB rolled out a suite of payment service provider (PSP) services under the brand PINWHEEL to enable companies to more easily connect to banks, payment processors and other institutions and conduct secure transactions. The idea behind the mark was that the payment ecosystem had both evolved and fractured into many different systems. However, the founders believed that disparate payment and financial services systems that are brought together to work in unison become more than the sum of its parts, just like individual blades of a *pinwheel*.

8. One set of software tools EMB made available was the PINWHEEL brand API toolkit, enabling companies to seamlessly integrate many different payment platforms with their online presences (*e.g.*, their e-commerce stores). To help promote the PINWHEEL brand of financial services, on May 17, 2016, EMB registered the domain name pinwheelpay.com, and launched its PINWHEEL-dedicated website at that URL in late 2017.

9. The list of integrations with financial service providers and other companies EMB has made available under the PINWHEEL brand has continued to grow over the years. EMB under the PINWHEEL brand has become a full service ASP and PSP, and PINWHEEL has become a trusted brand, especially to the "Underbanked, Not Undervalued" (See, https://pinwheelpay.com/about.php).

10. Moreover, in order to further assist merchants in developing their own, customized payment solutions for their many sales channels including online, brick and mortar and phone sales, EMB launched its www.paybypinwheel.com website.

This site enabled merchants to access a number of tools under the PINWHEEL brand, including its payments gateway, its software integration API's and SDK toolkit accessible at https://api.paybypinwheel.com/ as well as consumer fraud prevention and security solutions.

11. On June 2, 2020, EMB filed a United States §1(a) "in use", federal service mark application on the principal register for its mark PINWHEEL (word only) (the "Mark"). On March 2, 2021, the Mark was published in the Trademark Official Gazette. On May 18, 2021, the USPTO issued U.S. Registration No. 6,351,972 for the PINWHEEL mark covering the following services: "Application service provider featuring application programming interface (API) software; Platform as a service (PAAS) featuring computer software platforms for merchant transaction and payment processing; Providing on-line non-downloadable software for use with merchant transaction and payment processing", in International Class 42 (the '972 Registration). Attached as Exhibit A is a copy of the certificate of registration for the '972 Registration.

## UTI'S USES OF THE PINWHEEL MARK

12. Upon information and belief, in 2018, Anish Basu, Curtis Lee and Kurt Lin founded a new financial services company they would call PINWHEEL "with the mission to create a fairer financial system." See, www.pinwheelapi.com/about

13. Upon information and belief, in 2019, the founders began building an API for payroll applications and received initial seed funding. *Id*.

14. Upon information and belief, on or about February 6, 2019, the founders incorporated as Delaware corporation under the name Underdog Technologies, Inc. ("UTI"), doing business as PINWHEEL.

15. Upon information and belief, on or about August 21, 2019, UTI registered the domain name getpinwheel.com, and on May 8, 2020 it registered the domain name pinwheelapi.com.

16. Upon information and belief, UTI launched its website at

www.getpinwheel.com in or around the middle of 2020.

17. Upon information and belief, the business of UTI under the PINWHEEL brand is to develop financial services software, including API's to enable third party financial service applications to access personal payment information including direct deposit and income data.

18. Upon information and belief, since its public launch, the PINWHEEL word mark has been used extensively by UTI to promote its growing suite of financial API's and services.

## **CONFUSION IS NOT ONLY LIKELY, IT IS HAPPENING**

19. On May 17, 2021, an EMB sales representative reported to EMB's management a phone conversation with a new prospective client for its PINWHEEL merchant services including its integration services. The prospective client reported being "completely confused while calling into our PINWHEEL phone line [because she] saw this website with a logo that was very similar [to EMB's] https://www.getpinwheel.com/". This prospective customer reported mistakenly calling UTI asking about EMB's PINWHEEL integration services. This is not the only time EMB has become aware of actual consumer confusion with respect to the EMB's PINWHEEL branded services and UTI's PINWHEEL branded services.

20. Given EMB's substantial focus on its financial services software and its platform as a service under the PINWHEEL brand, it is highly likely that myriad consumers looking for software, API and online financial services have been and will continue to be confused by UTI's PINWHEEL services and its URL's pinwheelapi.com and getpinwheel.com, both linking to UTI's website.

21. In short, the exact same name being used on very similar and related services has caused actual confusion and is bound to continue to cause serious consumer confusion.

## COUNT 1

### (Violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*)

22. EMB refers to and incorporate by reference paragraphs 1 through 21, inclusive, of the Complaint.

23. Pursuant to 15 U.S.C. § 1057(c), EMB's ownership of the '972 Registration presumptively grants EMB the senior exclusive right to use the trademark "PINWHEEL" in the United States as against any user of the same trademark in related fields.

24. The '972 registration is valid, subsisting, unrevoked and uncancelled.

25. UTI, without authorization or license from Plaintiff, has used and has knowingly and willfully continued to use the identical PINWHEEL mark in connection with the advertisement, offer for sale and sale of its financial services, through, *inter alia*, the Internet at least at the websites www.getpinwheel.com and www.pinwheelapi.com (the "Infringing Websites").

26. Defendant's use of the PINWHEEL mark on or in connection with the advertising, marketing, distribution, offering for sale and sale of its services is likely to cause and has caused confusion, mistake and deception by and among consumers and is irreparably harming Plaintiff in violation of 15 U.S.C. § 1114 (§ 32 of the Lanham Act).

## COUNT 2

### (Violation of §43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a))

27. EMB refers to and incorporate by reference paragraphs 1 through 26, inclusive, of the Complaint.

28. UTI is using words, terms, names, or combinations thereof, that are likely to be confused with EMB's PINWHEEL trademark and likely to mislead or confuse purchasers of EMB's products and services.

29. UTI's conduct constitutes making a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is

likely to cause confusion, mistake, or to deceive as to the connection between UTI's products and services and EMB's products and services and harm EMB.

30. UTI's conduct is in violation of 15 U.S.C. § 1125 (§ 43 of the Lanham Act).

## COUNT 3
### (Unfair Business Practice – Bus. & Prof. Code §§17200 *et seq.*)

31. EMB refers to and incorporate by reference paragraphs 1 through 30, inclusive, of the Complaint.

32. California *Business & Professions Code* § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." EMB is informed and believes, and on the basis of such information and belief, alleges that UTI has engaged, and continue to be engaged, in unlawful, unfair, and/or fraudulent business practices in violation of California *Business & Professions Code* §§ 17200 *et seq.*

33. UTI's violations of the Lanham Act also constitute predicate violations for a claim for unlawful, unfair, and/or fraudulent business practices in violation of California Business & Professional Code §§17200, *et seq*.

34. The unlawful, unfair and/or fraudulent business practices of UTI, as alleged in this Complaint, are a continuing threat to Plaintiff EMB. For example, UTI has and continues to use EMB's property.

35. This unlawful conduct was a substantial factor in causing and proximately caused EMB's damages in an amount to be proven at trial but in excess of the jurisdictional minimums of this Court.

36. As a direct and proximate result of these acts, UTI has been unjustly enriched, and in the future will continue to be unjustly enriched by, among other things, their unlawful possession and use of EMB's property.

37. EMB has been damaged monetarily by UTI's unlawful, unfair and/or fraudulent business conduct as alleged herein, and will continue to be damaged by Defendant's conduct unless enjoined.

38. EMB has been irreparably injured by UTI's unlawful, unfair, and/or fraudulent conduct.

39. UTI's actions violate California Business & Professional Code §§17200 *et seq.* for which EMB is entitled to the remedies permitted by statute as well as restitution, injunctive relief, including a temporary restraining order, preliminary injunction and permanent injunction.

## PRAYER FOR RELIEF

**WHEREFORE**, EMB prays for judgment against Defendant as follows:

1. That UTI, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the PINWHEEL mark or any reproductions, counterfeits, copies or colorable imitations of the PINWHEEL mark in connection with the distribution, marketing, advertising, offer for sale and/or sale of any (i) any UTI financial services products or services, including, but not limited to those offered at the Infringing Websites; and (ii) financial products or services not authorized by EMB to be sold in connection with the PINWHEEL mark;

   b. committing any acts calculated to cause consumers to believe that UTI's products and services are those sold under the authorization, control, or supervision of EMB, or are sponsored by, approved by, or otherwise connected with EMB;

   c. further infringing the PINWHEEL mark and damaging EMB's goodwill;

   d. competing unfairly with EMB in any manner;

   e. shipping, delivering, holding for sale, distributing, hosting, returning, transferring or otherwise moving, storing or disposing of in any manner

     products or services not authorized by EMB to be sold or offered for sale, and that bear the PINWHEEL mark or any reproductions or colorable imitations thereof;

  f. using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the Infringing Websites, or any other domain name that is being used to sell or is the means by which UTI could continue to sell its products and services;

  g. operating and/or hosting websites at the Infringing Websites and any other domain names registered or operated by UTI that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product or service bearing the PINWHEEL mark or any reproduction or colorable imitation thereof that is not authorized by Bella to be sold in connection with the PINWHEEL mark; and

 2. That UTI, within ten (10) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon EMB a written report under oath setting forth in detail the manner in which UTI has complied with the injunctive relief set forth above.

 3. That UTI account for and pay over to EMB any and all profits realized by UTI by reason of UTI's unlawful acts herein alleged, and that the amount of damages for infringement of the PINWHEEL mark be increased by a sum not exceeding three times the amount thereof as provided by law as provided by 15 U.S.C. § 1117; and

 4. That UTI, within ten (10) days after service of judgment with notice of entry thereof upon them, be required to transfer the domain names pinwheelapi.com and getpinwheel.com over to EMB.

 5. Declaring that UTI's uses of the Mark constitutes and/or would constitute infringement of the rights of EMB in the Mark under 15 U.S.C. § 1125(a) and/or 15 U.S.C. § 1114(1)(a);

6. Awarding EMB monetary relief, including EMB's actual damages, UTI's profits and EMB's lost profits for violations of 15 U.S.C. § 1125(a), 15 U.S.C. § 1114(1)(a), and California law in an amount to be determined;

7. For incidental and consequential damages;

8. For interest on the sum at the legal rate;

9. For punitive and exemplary damages;

10. That EMB be awarded its reasonable attorneys' fees and costs; and

11. Grant EMB such other and further legal relief as may be just and proper.

DATED: July 28, 2021          FINN IP LAW, PC


By:    */s/ Jeffrey A. Finn*
       JEFFREY A. FINN
Attorney for Plaintiff eMerchantBroker.com LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands and requests a trial by jury of all issues raised that are triable by jury.

DATED: July 28, 2021  FINN IP LAW, PC


By: _____*/s/ Jeffrey A. Finn*_____
JEFFREY A. FINN
Attorney for Plaintiff eMerchantBroker.com LLC

# EXHIBIT A

# United States of America
## United States Patent and Trademark Office

# PINWHEEL

**Reg. No. 6,351,972**
**Registered May 18, 2021**
**Int. Cl.: 42**
**Service Mark**
**Principal Register**

eMerchantBroker.com LLC (CALIFORNIA LIMITED LIABILITY COMPANY)
2985 E Hillcrest Dr., Suite 209
Thousand Oaks, CALIFORNIA 91362

CLASS 42: Application service provider featuring application programming interface (API) software; Platform as a service (PAAS) featuring computer software platforms for merchant transaction and payment processing; Providing on-line non-downloadable software for use with merchant transaction and payment processing

FIRST USE 5-17-2016; IN COMMERCE 5-17-2016

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-945,027, FILED 06-02-2020



*[Signature]*
Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office

